1  Roderick M. Thompson (State Bar No. 96192)
   rthompson@fbm.com
2  Deepak Gupta (State Bar No. 226991)
   dgupta@fbm.com
3  Sunshine W. Yin (State Bar No. 293799)
   syin@fbm.com
4  FARELLA BRAUN + MARTEL LLP
   235 Montgomery Street, 17th Floor
5  San Francisco, CA  94104
   Telephone:  (415) 954-4400
6  Facsimile:   (415) 954-4480

7  Attorneys for Defendant
   AMAZON.COM, INC.
8

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

12  BARRY ROSEN,                    Case No. 14-cv-02115-ABC-E

13              Plaintiff,          Related and Consolidated for Trial with
                                    Case: 12-cv-10413-ABC-E
14  v.
                                    **DEFENDANT AMAZON.COM'S**
15  AMAZON.COM, INC., et al.,       **REPLY TO PLAINTIFF ROSEN'S**
                                    **OPPOSITION TO MOTION TO**
16              Defendant.          **DISMISS**

17                                  **DATE:        June 2, 2014**
                                    **TIME:        10:00 a.m.**
18                                  **DEPT.:       Courtroom 680**
                                    **JUDGE:       Hon. Audrey B. Collins**
19

20                                  ACTION FILED: March 20, 2014

21

22

23

24

25

26

27

28

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E
RELATED CASE: 14-CV-10413-ABC-E

30240\4377117.2

1

**TABLE OF CONTENTS**

2

Page

3   I.     INTRODUCTION ........................................................................... 1

4   II.    PLAINTIFF CONCEDES THAT HE HAS NO CLAIM FOR DIRECT
           INFRINGEMENT AGAINST AMAZON ...................................... 3

5   III.   PLAINTIFF FAILS TO STATE A CLAIM FOR CONTRIBUTORY
           INFRINGEMENT AGAINST AMAZON. ..................................... 4

6
           A.     Amazon Cannot Be Contributorily Liable for the Initial Upload
7                 By A Third Party User Because There Is No Alleged Basis Of
                  Knowledge; The Notice Came Later ...................................... 4

8          B.     After The Notice, Amazon's Employee Believed That The
                  Matter Had Been Resolved .................................................... 5

9          C.     Plaintiff Is Estopped Because His Own Silence Created This
10                Situation ................................................................................ 6

11         D.     The Post-Notice Availability and Persistence of the File In an
                  Unindexed, Unsearchable State Does Not Satisfy The
                  Requirement For An *Actual* Act of Direct Infringement ...................... 7

12
                  1.    The Fourth Circuit *Hotaling* Case Is Not Law In This
13                      Circuit and Is Inapposite On These Facts ................................... 7

14                2.    The Controlling Supreme Court and Ninth Circuit
                        Precedent Undisputedly Require *Actual* Distribution ............. 10

15         E.     Plaintiff Incorrectly Relies on the Overturned Pre-*Twombly*
                  Motion to Dismiss Standard And Requests Discovery Based on
16                Speculations ........................................................................ 11

           F.     The DMCA Safe Harbor Is Not At Issue Here ................................... 13
17
    IV.    PLAINTIFF HAS EFFECTIVELY CONCEDED HIS INDUCEMENT
18         THEORY ................................................................................... 13

19  V.     THE COMPLAINT FAILS TO ALLEGE VICARIOUS LIABILITY .......... 14

           A.     Amazon Has No Practical Ability to Control Infringement ............... 14
20
           B.     Plaintiff Has Further Failed to Allege That Amazon Receives a
21                Direct Financial Benefit from Users' Infringing Conduct................. 15

    VI.    CONCLUSION .......................................................................... 16

22

23

24

25

26

27

28

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E                    - i -                    30240\4377117.2
RELATED CASE: 14-CV-10413-ABC-E

1

# TABLE OF AUTHORITIES

2

**Page**

3

## FEDERAL COURT CASES

4

5

*Am. Inst. of Physics v. Winstead PC,*
   2013 WL 6242843 (N.D. Tex. Dec. 3, 2013).......................................3, 4

6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..........................................................12, 13

7

8

*Atl. Recording Corp. v. Howell,*
   554 F. Supp. 2d 976 (D. Ariz. 2008)..............................................11

9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..........................................................12, 14

10

11

*Bridgeport Music, Inc. v. Rhyme Syndicate Music,*
   376 F.3d 615 (6th Cir. 2004)......................................................8

12

*Capitol Records, Inc. v. Thomas,*
   579 F. Supp. 2d 1210 (D. Minn. 2008) ............................................8

13

14

*Columbia Pictures Indus., Inc. v. Fung,*
   710 F. 3d 1020 (9th Cir. 2013).....................................................10

15

*Elektra Entm't Grp., Inc. v. Barker,*
   551 F. Supp. 2d 234 (S.D.N.Y. 2008) .............................................8

16

17

*Ellison v. Robertson,*
   357 F. 3d 1072 (9th Cir. 2004) ...................................................16

18

*Faulkner v. Nat'l Geographic Soc'y,*
   211 F. Supp. 2d 450 (S.D.N.Y. 2002) .............................................5

19

20

*Field v. Google, Inc.,*
   412 F. Supp. 2d 1106 (D. Nev. 2006) .............................................6

21

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,*
   443 F.2d 1159 (2d Cir. 1971) .....................................................5

22

23

*Hotaling v. Church of Jesus Christ of Latter-Day Saints,*
   118 F.3d 199 (4th Cir. 1997)...............................................7, 8, 9, 10

24

*In re Napster, Inc. Copyright Litig.,*
   377 F. Supp. 2d 796 (N.D. Cal. 2005)......................................7, 9, 10, 16

25

*Luvdarts, LLC v. AT&T Mobility, LLC,*
   710 F.3d 1068 (9th Cir. 2013)....................................................15

26

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
   545 U.S. 913 .............................................................10, 13, 14

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E          - ii -
RELATED CASE: 14-CV-10413-ABC-E

30240\4377117.2

*Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.,*
991 F.2d 426 (8th Cir. 1993) ...................................................................... 8

*Perfect 10, Inc. v. Amazon.com, Inc.,*
508 F.3d 1146 (9th Cir. 2007) ..................................................... 5, 11, 14, 15

*Perfect 10 v. Rapidshare A.G.,*
2010 U.S. Dist. LEXIS 146053 (May 18, 2010) ...................................... 9

*Religious Tech. Ctr. v. Netcom On-Line Commc'n,*
907 F. Supp. 1361 (1995) ...................................................................... 3, 4

*Religious Tech. Ctr. v. Wollersheim,*
971 F.2d 364 (9th Cir. 1992) ...................................................................... 3

*Rosen v. Hosting Servs., Inc.,*
771 F. Supp. 2d 1219 (C.D. Cal. 2010) ...................................................... 4

*Sony Corp. of Am. v. Universal City Studios,*
464 U.S. 417 (1984) ...................................................................... 10, 11

## FEDERAL STATUTORY AUTHORITIES

17 U.S.C. § 512(l) .................................................................................... 13

## OTHER AUTHORITIES

4 *Nimmer on Copyright* § 13.05[D][2] (2013) ............................................ 3

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E                         - iii -
RELATED CASE: 14-CV-10413-ABC-E

30240\4377117.2

I. **INTRODUCTION**

In response to the motion to dismiss, Plaintiff has dropped his direct infringement claim against Amazon. His claim is reduced to speculation that there might have been some instance of a direct infringement by a user for which Amazon should be secondarily liable under one of the frameworks of service provider liability. None of his speculations, however, can support a viable claim for relief.

Plaintiff's real gripe is that Amazon allowed an image and defunct detail page to persist on a server after it received Plaintiff's takedown notice. After Amazon received the notice and the buy link on the detail page was deactivated, however, the image and detail page were unindexed and unsearchable by the public. Compl. ¶¶ 11-18. One would have needed to (1) have saved the URL before the link was deactivated and became unsearchable (2) somehow know that the images could still theoretically be available via the URL, and (3) have an interest or motive to view the small images specifically on Amazon's website, when he could have viewed the image through far easier means (such as by searching on Google). Plaintiff has no plausible basis to believe that anyone (other than himself) ever actually accessed those images after his notice. Theoretical injury is insufficient to state a claim. In this situation, the law recognizes no injury, finds no liability, and awards no remedy.

Plaintiff's opposition catalogs irrelevant criticisms of Amazon, faulting it for everything from allowing merchants to upload images, to providing consumers their purchase histories, to charging merchants fees, and much more. But that is not copyright infringement. Decades of precedent have crafted a careful balance that allows new technologies to co-exist with the rights of artists and authors like Plaintiff. As a matter of copyright law, the present Complaint fails to state a claim on which relief can be granted. It should be dismissed for three reasons:

**First**, the mere "availability" of a file on a web server in an unindexed,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E                    - 1 -
RELATED CASE: 14-CV-10413-ABC-E

30240\4377117.2

unsearchable state does not qualify as direct infringement such that a service provider might be automatically liable as a contributory infringer simply by being given notice of the file.  Secondary liability requires a direct infringement, and Ninth Circuit authority requires actual *communication* of copyrighted data to find direct infringement liability.  The out-of-circuit "making available cases" are not law here; and even if they were, they all involved works that *were* indexed and searchable, which Plaintiff concedes was not the case here.  Plaintiff resorts to a Copyright Office notice and a partisan industry group memo to prove his point, but these documents do not change the current state of the law.  Thus, Plaintiff's core theory of liability—that Amazon is "contributorily liable" because it received a notice and in response it disabled access to but did not completely erase the files on its server—fails as a matter of law.

**Second**, Plaintiff's assertions that there *may* have been an actual distribution of the photo when the file was not publicly searchable—perhaps  through Pinterest, Facebook, or an Amazon purchase history—is precisely the sort of wishful speculation that *Twombly* and *Iqbal* say may not be used to unlock the doors of discovery.  Plaintiff's opposition is incorrectly premised on the *Conley* "no set of facts" test (*see* Opp. at 8), which the Supreme Court explicitly overturned in *Twombly* and *Iqbal*.  No matter how many times Plaintiff may call his speculation "plausible," he cannot make it so.

**Third**, independent of Plaintiff's failure to adequately plead direct infringement, Plaintiff has also failed to plead the requirements for secondary liability against a service provider.  His Opposition concedes that the Amazon employee's email response to his notice shows that Amazon lacked the actual knowledge required for "contributory infringement," and further concedes that his own tactical silence *perpetuated* Amazon's lack of knowledge, which is grounds for estoppel.  Plaintiff all but gives up on his "inducement" theory of liability.  And he fails to plead the practical control and direct financial benefit necessary for service

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E          - 2 -
RELATED CASE: 14-CV-10413-ABC-E                                    30240\4377117.2

provider "vicarious liability."

As the Complaint fails to plead an instance of actual direct infringement for which Amazon can be liable under some cognizable theory of secondary liability, it should be dismissed with prejudice on these multiple alternative grounds.

## II.   PLAINTIFF CONCEDES THAT HE HAS NO CLAIM FOR DIRECT INFRINGEMENT AGAINST AMAZON.

In a footnote, Plaintiff makes the evasive concession that "Plaintiff does not intend to assert claims for direct copyright infringement against Amazon.com except in that Amazon very likely and quite plausibly viewed the Photograph post-DMCA Notice."  Opp. at 10, n.7.  Thus, it is unclear whether Plaintiff has actually dropped his direct copyright infringement claims against Amazon, and what he believes his true and meritorious allegations against Amazon to be.  Such evasiveness is insufficient to state a claim for relief and reveals that Plaintiff has no basis to allege that Amazon has any infringement liability, whether direct or secondary.

Plaintiff complains that Amazon likely viewed the image post-DMCA notice. Of course Amazon viewed the image; so has everyone involved in this litigation, since Plaintiff attached the photograph to his Complaint.  Secondary liability case law contemplates that a service provider should "reasonably verify a claim of infringement," which would be impossible without examining the material. *Religious Tech. Ctr. v. Netcom On-Line Commc'n*, 907 F. Supp. 1361, 1374 (1995) [*Netcom*].  Similarly, reviewing and attaching copies of copyrighted materials in connection with bona fide legal proceedings is considered a fair use.  *See* 4 *Nimmer on Copyright* §13.05[D][2] (2013) ("Works are customarily reproduced in various types of judicial proceedings, including obscenity and defamation actions, to say nothing of copyright infringement actions, and it seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties for offering the work in evidence.") (citing

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E                - 3 -
RELATED CASE: 14-CV-10413-ABC-E

30240\4377117.2

*Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 (9th Cir. 1992)); *see also Am. Inst. of Physics v. Winstead PC,* 2013 WL 6242843, at *13 (N.D. Tex. Dec. 3, 2013) (holding that copying journal articles to show prior art in patent proceedings is fair use).

Despite the concession, Plaintiff elsewhere makes much of the initial upload by History of the Game, alleging "Amazon *itself* copies the images to store on its servers." Opp. at 11 (emphasis added). However, any such automated copying by Amazon's servers cannot violate his reproduction right because it is non-volitional. *See Netcom*, 907 F. Supp. 1361 at 1369-70 (service provider not "directly liable for copying that is automatic and caused by a subscriber" due to a lack of volitional conduct); Mot. at 8 (collecting authorities). Plaintiff does not attempt to rebut this well-settled authority cited in Amazon's opening brief.

Recognizing that his direct infringement claim against Amazon is baseless, Plaintiff is left with his claims of secondary liability. Plaintiff advances a variety of secondary liability theories, and searches far and wide for some direct infringement by a user on which to base these, but all of these combinations fail.

## III.   PLAINTIFF FAILS TO STATE A CLAIM FOR CONTRIBUTORY INFRINGEMENT AGAINST AMAZON.

Plaintiff fails to state a claim that Amazon can be liable for any alleged direct infringement by a user under the framework of contributory infringement liability.

### A.   Amazon Cannot Be Contributorily Liable for the Initial Upload By A Third Party User Because There Is No Alleged Basis Of Knowledge; The Notice Came Later.

Plaintiff concedes and even emphasizes that the third-party merchant, not Amazon, initially uploaded the JPEG file, yet tries (in vain) to attach liability for the upload to Amazon. Opp. at 3; 4. Contributory liability requires "knowledge." Much like in his other cases, here Amazon did not have "any other basis for being aware of the alleged infringement apart from the takedown letter sent by Rosen." *Rosen v. Hosting Servs., Inc.*, 771 F. Supp. 2d 1219 (C.D. Cal. 2010). Thus, the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E                - 4 -
RELATED CASE: 14-CV-10413-ABC-E

30240\4377117.2

upload of the image by a third-party merchant, which was prior to Mr. Rosen's notice, cannot serve as the instance of direct infringement for which Amazon may be held contributorily liable.  Opp. at 11.  Only "one who, *with knowledge* of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory infringer.'"  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (emphasis added) (*citing Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).  For this same reason, Plaintiff may not hitch any pre-notice direct infringement by a user (*i.e.*, a view of the Kournikova detail page or sale of the photo) to the contributory infringement framework—there is no basis to plead knowledge against Amazon.[1]

## B.    After The Notice, Amazon's Employee Believed That The <u>Matter Had Been Resolved.</u>

Contributory infringement in the context of cyberspace requires "*actual* knowledge that specific infringing material is available using [a] system…"  *Perfect 10*, 508 F.3d at 1172 (emphasis added).  The only basis for *actual* knowledge of specific infringement pled in the Complaint is the notice that Plaintiff sent to Amazon.  Once the Kournikova buy link was removed, however, the detail page was no longer indexed or searchable, and the Amazon employee's email response to Plaintiff shows a belief that the matter had thus been brought "to a close."  Compl., Exh. 9.  Thus, in Opposition, Plaintiff concedes (as he must) that Amazon did not have *actual* knowledge of his remaining concern that the image persisted on a detail page or image server that was neither indexed nor searchable using Amazon's search engine.  While Plaintiff was not *obligated* to send a second notice,

---

[1] If Plaintiff intends to argue that once Amazon received the notice, it became retroactively liable for the user's initial upload, this argument is a non-starter.  *Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450 (S.D.N.Y. 2002) (The knowledge "prong is satisfied if the defendant 'knew or should have known' of the infringing activity *at the time of its material contribution*.") (emphasis added).  A service provider should take "simple measures to prevent *further* damage" to a plaintiff's copyright.  *Perfect 10*, 508 F.3d 1146 at 1173 (emphasis added).

a Plaintiff must plead knowledge to prove contributory infringement, and this he has not done.

### C.   Plaintiff Is Estopped Because His Own Silence Created This Situation.

As set forth in Amazon's opening papers (Mot. at 11:20-12:2) (and unrebutted by Plaintiff's opposition), under *Field v. Google, Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006), Plaintiff is estopped from making any copyright infringement claims against Amazon because "he has aided the defendant in infringing or otherwise induced it to infringe or has committed covert acts such as holding out…by silence or inaction." *Id.* at 1116.  Plaintiff's own "silence" and "inaction," when faced with Amazon's response that it believed the matter was resolved, "aided" and "induced" Amazon to maintain the status quo after the buy link and detail page were made inaccessible; thus the *Field* rule of estoppel bars Plaintiff's claim.

In *Field*, the Plaintiff knew that Google would automatically allow access to his copyrighted works through "cached" links when he posted them on the Internet, unless he instructed otherwise.  *Id.* at 1117.  But Field remained silent regarding his unstated desire not to have "cached" links provided to his website and failed to provide the required instructions.  *Id.*  His claim was barred.  Similarly, here, Mr. Rosen chose to remain silent when faced with a clear indication of Amazon's belief that his matter was resolved.  Perversely, Plaintiff now uses his silence to claim that Amazon "knowingly refused" to remove the image from the (unsearchable) product detail page.  Yet the email attached to his own Complaint demonstrates that Amazon believed the images were removed.  Far from the deliberate indifference he claims, at most Amazon made a mistake that Plaintiff could have corrected with a simple email that could have avoided litigation altogether.[2]  Because his silence

---

[2] Indeed, his attorney could have sent such a note given the pendency of the related action against Amazon, but instead opted to file a complaint without even notifying Amazon's counsel.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30240\4377117.2

1  prevented a full resolution of his remaining concern, Plaintiff is estopped from

2  asserting contributory infringement.

**D.**  **The Post-Notice Availability and Persistence of the File In an Unindexed, Unsearchable State Does Not Satisfy The Requirement For An *Actual* Act of Direct Infringement.**

5  Mr. Rosen's core theory of liability appears to be that the image persisted on

6  Amazon's servers after he provided notice to Amazon of its presence.  But Plaintiff

7  nowhere alleges that any user *actually* accessed the image after Amazon received

8  (and acknowledged) the notice.  To the contrary, Plaintiff concedes that once the

9  buy link to the photo was removed, the deactivated detail page and the JPEG on

10  Amazon's internal image server were no longer indexed and no longer searchable

11  via Amazon's search engine.

12  Plaintiff contends that because the image file persisted on a server, it was

13  "available" to a member of the public who might have saved the URL from before

14  and that this availability alone constitutes direct infringement.  This theory of

15  "hypothetical" infringement is contrary to the unrebutted Supreme Court and Ninth

16  Circuit authority cited by Amazon in its opening papers, all of which have required

17  *actual* infringement.  Even under the *Hotaling* "making available" case cited by

18  Plaintiff and the few cases that have followed it (which are not law in this Circuit),

19  the work complained of must at least be indexed and searchable by the public,

20  which the image here undisputedly was not.

**1.**  **The Fourth Circuit *Hotaling* Case Is Not Law In This Circuit and Is Inapposite On These Facts.**

23  Plaintiff cites the Fourth Circuit case of *Hotaling v. Church of Jesus Christ of*

24  *Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997) to support his argument that the

25  "making available" of an image may constitute an "actual" distribution that violates

26  the Copyright Act.

27  As a preliminary matter, *Hotaling* has not been followed by the Ninth

28  Circuit, and has been expressly rejected by most courts that have considered it.  *See*

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E                    - 7 -
RELATED CASE: 14-CV-10413-ABC-E

30240\4377117.2

1   *In re Napster, Inc. Copyright Litig.*, 377 F. Supp. 2d 796, 802-05 (N.D. Cal. 2005)

2   (criticizing *Hotaling* as being "contrary to the weight of [other] authorities" and

3   "inconsistent with the text and legislative history of the Copyright Act of 1976");

4   *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir.

5   2004) (mentioning and declining to follow *Hotaling*); *Nat'l Car Rental Sys., Inc. v.*

6   *Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 434 (8th Cir. 1993) (stating that

7   infringement of the distribution right requires the actual dissemination of copies of

8   phonorecords); *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1225 (D.

9   Minn. 2008) (finding *Hotaling* is not binding upon the Court and is inconsistent

10   with "a logical statutory interpretation of § 106(3), the body of Copyright Act case

11   law, and the legislative history of the Copyright Act"); *Elektra Entm't Grp., Inc. v.*

12   *Barker*, 551 F. Supp. 2d 234, 243 (S.D.N.Y. 2008) (finding that only "a small

13   number of courts" follow *Hotaling's* "make available" theory and declining to

14   follow the theory because it is not "faithful to the statute," which "itself contains no

15   'make available language in its definition of distribution or publication'").

16       But even if *Hotaling* were valid law in the Ninth Circuit, it does not support

17   Plaintiff's argument; Plaintiff misunderstands its holding and misapplies it here.  In

18   *Hotaling*, a library had an unauthorized copy of a book, which it had indexed and

19   made searchable in its card catalog system.  118 F.3d 199 at 201.  The library

20   argued that without a showing that any member of the public actually read the

21   book, it could not be liable for "distribution."  *Id.* at 201-203.  The court found that

22   the library had "made available" the work by "adding it to its collection and listing

23   it in its index or catalog system," and that therefore "it had completed the steps

24   necessary for distribution to the public."  *Id.*  Thus, the key was that the library

25   indexed the book and made it searchable for the public.

26       By contrast, here, Plaintiff concedes that the detail page and Kournikova

27   JPEG were no longer indexed or searchable after Amazon received notice and the

28   buy link was deactivated.  In actuality, Amazon's servers made the image

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E                    - 8 -
RELATED CASE: 14-CV-10413-ABC-E

30240\4377117.2

*un*available, and Amazon did *not* "complete the steps necessary for distribution to the public." Unlike in *Hotaling*, no member of the public could have found the image by browsing Amazon's site or by specifically searching for it on Amazon's search engine. Only someone who had saved the URL, *i.e.* Plaintiff, could access it.

The Southern District of California in *Perfect 10 v. Rapidshare A.G.* drew this very same distinction: where a webhost does not make files indexed or searchable, distribution may not be "deemed." 2010 U.S. Dist. LEXIS 146053 (May 18, 2010), Order Denying Plaintiff's Motion for Preliminary Injunction [*Rapidshare*]. In *Rapidshare*, Perfect 10 sued Rapidshare, a file-sharing website where users could upload and download files, for direct infringement under a "making available" theory. But the court found that Perfect 10 had failed to show Rapidshare should be liable for deemed distribution because:

> The public cannot enter rapidshare.com and browse through a catalog for desired materials as the library visitors could in *Hotaling*. *See* 118 F.3d at 203 (concluding that "[w]hen a public library adds a work to its collection, lists the work in its index or catalog system, and makes the work available to the borrowing or browsing public, it has completed all the steps necessary for distribution to the public"). Additionally, a RapidShare user cannot find files located on RapidShare's servers in the same way as a Napster user could find a specific song from a peer's library because RapidShare does not index its files. *See Napster*, 239 F.3d at 1012 (stating that "the user can access an index of all MP3 file names in a particular hotlisted user's library and request a file in the library by selecting the file name"). Because the Court concludes that RapidShare does not make infringing material available in the same way or to the same extent as the library in *Hotaling* or the users in *Napster*, the Court declines to hold RapidShare liable for direct infringement on a theory of deemed distribution. *Id.* at 5-6.

Because it is undisputed that the JPEG, which had been uploaded by a third-party merchant, was no longer indexed nor could have been located by using Amazon's search engine after the buy page was removed, under *Rapidshare*'s holding, *Hotaling* and its progeny are inapposite on these facts.

The Copyright Notice cited by Plaintiff also recognizes this key aspect of

*Hotaling*.  *See* Dkt. 24-1 ("The [*Hotaling*] court found that making a work available to the public constituted distribution where a "public library adds a work to its collection, *lists the work in its index or catalog system*, and makes the work available to the borrowing or browsing public"; "The Ninth Circuit in *A&M Records v. Napster, Inc.* concluded that "Napster users who *upload file names to the search index* for others to copy" have effectively made these files available.) (emphases added).  Plaintiff himself cites the *Napster* language in his Opposition. Opp. at 12.  Thus, even if "making available" liability were the law, it would not apply here.[3]

## 2.  The Controlling Supreme Court and Ninth Circuit Precedent Undisputedly Require *Actual* Distribution.

Putting aside for a moment factually inapposite out-of-circuit case law, the Supreme Court and Ninth Circuit have unwaveringly required a showing of "actual" acts of direct infringement.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940 (liability of a peer-to-peer file-sharing network "of course" requires evidence of actual infringement by recipients of the device); *Columbia Pictures Indus., Inc. v. Fung*, 710 F. 3d 1020, 1034 (9th Cir. 2013) (requiring "evidence of actual infringement" by users of Defendant's peer-to-peer related services; "uploading and downloading copyrighted material are infringing

---

[3] The lobbyist group's response to this Notice attached to Plaintiff's Opposition (Opp. Exh. 2) is one of nearly thirty responses by various partisan groups.  It is unclear what Plaintiff hopes to prove by attaching these documents.  That Congress may be in the early stages of considering a possible modification to the Copyright Act has no bearing on the outcome of this motion.  A court adjudicating a present dispute cannot anticipate what Congress might do in the future.  In *Sony Corp. of Am. v. Universal City Studios*, 464 U.S. 417 (1984), the Supreme Court recognized "it is Congress that has been assigned the task of defining the scope of the limited monopoly that should be granted to authors or to inventors in order to give the public appropriate access to their work product." *Id.* at 429.  In refusing to expand the scope of copyright protection as requested by Plaintiff with respect to the then nascent VCR technology, the Court held, "It may well be that Congress will take a fresh look at this new technology, just as it so often has examined other innovations in the past. But it is not our job to apply laws that have not yet been written." *Id.* at 456.  The same principle of restraint applies here with respect to Congress' present attempts to address the complex issues surrounding Internet service providers.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E                    - 10 -                    30240\4377117.2
RELATED CASE: 14-CV-10413-ABC-E

1   acts"; finding that where 90-96% of files available on the network were infringing

2   and defendant did "not attempt to rebut the factual assertion that his services were

3   widely used to infringe," the actual infringement requirement was satisfied).[4]

4   Plaintiff does not dispute that "actual distribution" is the controlling law of this

5   circuit.  Thus, a hypothetical distribution is insufficient.

6        An actual distribution would require that Amazon actually "communicated"

7   the image per *Perfect 10 v. Amazon.*  Plaintiff misleadingly states that *Perfect 10*

8   held that *storage* alone of a copyrighted work counts as a distribution; *Perfect 10*

9   clearly required both storage and *communication.  Perfect 10, Inc. v. Amazon.com,*

10  508 F.3d at 1159-61 ("Google does not own a collection of Perfect 10's full-size

11  images and does not *communicate* these images to the computers of people using

12  Google's search engine"; "the owner of a computer that does not store *and serve*

13  the electronic information to a user is not displaying that information") (emphasis

14  added).

15       Plaintiff's Complaint theory that the mere persistence of the image file on an

16  Amazon server can constitute direct infringement, absent any allegation of an actual

17  communication of the image file fails, and Amazon cannot be held liable as a

18  contributory infringer for such a "hypothetical" direct infringement.

19  **E.    Plaintiff Incorrectly Relies on the Overturned Pre-*Twombly*
        Motion to Dismiss Standard And Requests Discovery Based on
20      Speculations.**

21       Recognizing the lack of actual, relevant facts in his Complaint, Plaintiff adds

22  a host of speculations as to what discovery *might* show.  However, Plaintiff

23  incorrectly relies on the pre-*Twombly* standard from *Conley v. Gibson* which stated

24  that a complaint could not be dismissed "unless it appears beyond doubt that [he]

---

25  [4] The Copyright Office Notice cited by Plaintiff also recognizes that courts in the
26  Ninth Circuit have "relied on the language of [the Copyright Act] to require *actual*
    distribution in order to find a violation of [the distribution] right."  *Id.* Dkt. 24-1.
    Here, it cites many of the same cases cited above, such as *Atl. Recording Corp. v.
27  Howell*, 554 F. Supp. 2d 976, 983 (D. Ariz. 2008) ("Merely making an
    unauthorized copy of a copyrighted work available to the public does not violate a
28  copyright holder's exclusive right of distribution.").  *Id.*

1    can prove no set of facts in support of his claim which would entitle him to relief."

2    Opp. at 8 (relying on pre-*Twombly* cases).  The Supreme Court in "*Twombly* retired

3    the *Conley* no-set-of-facts test."  *Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009); *Bell*

4    *Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) ("The 'no set of facts' language

5    has been questioned, criticized, and explained away long enough by courts and

6    commentators, and is best forgotten as an incomplete, negative gloss on an accepted

7    pleading standard.").  Under the present day controlling standard for a motion to

8    dismiss, absent "a plausible claim for relief," and "where the well-pleaded facts do

9    not permit the court to infer more than the mere possibility of misconduct," a court

10   will "not unlock the doors of discovery."  *Iqbal*, 556 U.S. at 678-79.

11           In its Opposition, Plaintiff tacks on a series of new, implausible speculations

12   that offer nothing more than the *possibility* of an actual distribution:

13   •   Plaintiff speculates that a copy of the photo *may* have been sold, and if one

14       had been sold, then purchasers could view the image in their purchase history

15       after the buy link was removed.  Opp. at 3.  Yet, it remains speculation that

16       the image was ever sold, and it is another speculation that if there was a sale,

17       the purchaser engaged in the unusual behavior of repeatedly viewing their

18       purchase history.  In any case, this photograph was never sold – either before

19       or after Plaintiff's notice.

20   •   Plaintiff now asserts that the image *may* have been distributed to others on

21       the World Wide Web through "email, Facebook, Twitter and Pinterest."

22       Opp. at 3.  Yet, logically speaking, sharing of this kind – if it happened

23       before the notice, would have been without Amazon's knowledge; and after

24       the notice, it could have occurred only if someone had previously saved the

25       URL, and then directly accessed it by URL later, an occurrence that Plaintiff

26       concedes is implausible in light of the far easier means of retrieving these

27       pictures.[5]

28   _____

[5] These new allegations were not present in the Complaint and contradict Plaintiff's

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

1    These implausible additions to the Complaint are insufficient to satisfy the

2    *Twombly* and *Iqbal* pleading standard.  Dismissal is proper.

3          **F.**    **The DMCA Safe Harbor Is Not At Issue Here.**

4         Plaintiff repeatedly emphasizes that Amazon does not qualify for the DMCA

5    safe harbor, but Amazon is not asserting, *yet*, that the DMCA safe harbor applies.

6    The DMCA safe harbor is an *affirmative defense* whose merits may be determined

7    at summary judgment or trial.  Amazon here contends that the Complaint fails to

8    state a *prima facie* case of secondary liability.  By trying to defeat this motion based

9    on the DMCA safe harbor, Plaintiff is effectively trying to transform a shield for

10   service providers into a sword for copyright holders; the warped logic is that if a

11   service provider does not qualify for a limitation on liability, therefore, it must have

12   infringed.  *See* 17 U.S.C. § 512(l) (whether or not service provider is entitled to safe

13   harbor "shall not bear adversely upon the consideration of a defense by the service

14   provider that the service provider's conduct is not infringing under this title or any

15   other defense").

16        Plaintiff's unexplained statement that a "DMCA notice is not even required"

17   (Opp. at 9, Sec. B) is also highly misleading.  Any plaintiff attempting to hold a

18   party (such as a service provider) liable for contributory infringement must provide

19   some basis to show that the service provider had actual knowledge of the direct

20   infringement on which liability is predicated.  Here, the DMCA notice is the only

21   claimed basis of knowledge regarding the Kournikova photo.  Thus, there can be no

22   liability for the time period before it was sent.

23   **IV.**    **PLAINTIFF HAS EFFECTIVELY CONCEDED HIS INDUCEMENT**
24         **THEORY.**

25        Recognizing that his inducement theory is feeble because he cannot show

26   that Amazon had the specific intent necessary for inducement liability, Plaintiff's

27   

28   concession in the parties' meet and confer that Plaintiff does not know of any actual
     distribution (other than to Mr. Rosen himself) after the buy link was removed.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E                    - 13 -                    30240\4377117.2
RELATED CASE: 14-CV-10413-ABC-E

opposition barely attempts to defend this theory.  *See Grokster*, 545 U.S. at 919 (demanding a showing of a specific intent as manifested by "clear expression or other affirmative steps taken to foster infringement").  Instead, he advances conspiracy-like theories of Amazon's intent to infringe by, for example, pointing to Amazon's sitewide image standard.  Amazon's sitewide image standard states, "Images must have white backgrounds and cannot contain inset images, watermarks, or unauthorized content."  Exh. 14, at 1.  This policy clearly aims to *prevent* the uploading of unauthorized content (which often contains watermarks). Yet Plaintiff takes the *prohibition* of watermarks out of context and argues that such a policy "encourages users to remove copyright management information prior to upload."  Opp. at 16.

Plaintiff continues to suggest that Amazon's policy of requiring merchants to post pictures of the products they offer for sale somehow assists or causes infringement.  This is clearly a content-neutral policy that any online retailer would enact.  Plaintiff also tacks on the allegation that Amazon requires users to post these images at "relatively large sizes."  Opp. at 16.  It is unclear why the size of the image is relevant; even if it were, the size of the Kournikova image on Amazon's server could hardly be an effective vehicle for infringement: at Plaintiff's alleged 267x400 pixels (Compl. ¶ 12), the image is about the size of a Post-It note.

These examples do not set forth the "clear expression" of intent to foster infringement required by *Grokster*.  In fact, these arguments are designed to create "suspicion," which *Twombly* admonishes against.  *Twombly*, 550 U.S. at 555. Amazon's policies expressly prohibit intellectual property infringement, and it is implausible that such policies secretly aim to incite infringement.

## V.    THE COMPLAINT FAILS TO ALLEGE VICARIOUS LIABILITY.

### A.    Amazon Has No Practical Ability to Control Infringement.

Plaintiff fails to address controlling Supreme Court and Ninth Circuit authorities on vicarious liability, which require that a plaintiff show "the right and

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E                    - 14 -
RELATED CASE: 14-CV-10413-ABC-E

30240\4377117.2

ability to *supervise* the direct infringer," *see Grokster*, 545 U.S. at 930 n.9 (emphasis added), which requires a *practical* ability to control, *Perfect 10*, 508 F.3d at 1173.  Nor can he dispute that dismissal at the 12(b)(6) stage is proper when this standard is not met.  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013).  Plaintiff does not explain how Amazon's practical ability to assess the copyright status of every product and every image that users post on its platform is different from that of Google in *Perfect 10*.  *Perfect 10*, 508 F.3d at 1174 ("Without image-recognition technology, Google lacks the practical ability to police the infringing activities of third-party websites.")  Nor is Mr. Rosen in a different a position than the Plaintiff in *Luvdarts*, who failed to propose an implementable system for mobile carriers to detect infringement.  Plaintiff alleges that the mere ability to terminate users satisfies the "right and ability to control" prong of vicarious liability, but all service providers have this ability.  This does not constitute practical control over *infringement*.

In other words, Amazon, through its policies tries to prevent the upload of infringing material, but it does not have the practical ability to stop the uploading of potentially infringing material before it happens.  Therefore, it cannot be liable on a vicarious liability theory for the initial upload by the third-party merchant.  *See Perfect 10*, 508 F.3d at 1173-74 ("Google's right to terminate an AdSense partnership does not give Google the right to stop direct infringement by third-party websites.").

**B.    Plaintiff Has Further Failed to Allege That Amazon Receives a Direct Financial Benefit from Users' Infringing Conduct.**

Plaintiff cannot and has not argued that users come to Amazon's website with the object of viewing or downloading infringing photos, or that Amazon seeks to profit from infringing downloads (as in the dissimilar context of peer-to-peer file sharing networks like the one in *Napster*).  Charging fees for an online service that a few may wrongfully use for infringement does not of itself constitute a "direct

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E                - 15 -
RELATED CASE: 14-CV-10413-ABC-E

30240\4377117.2

financial benefit." If it were, then the Ninth Circuit would not have ruled in favor of AOL as it did in *Ellison v. Robertson*, 357 F. 3d 1072 (9th Cir. 2004). There it was undisputed that AOL received fees and "profit[ed] from subscriptions," and there were instances of direct infringement by some users. *Id.* at 1079. Yet this was not enough, because the legal standard looks to whether "the infringing activity constitutes a draw for subscribers, not just an added benefit." *Napster*, 239 F.3d at 1023. Plaintiff highlights Amazon's supposed admission that photos are needed to induce people to buy products (Opp. at 19), but this is irrelevant. Plaintiff ignores the salient point that people do not visit Amazon's website in order to view or download infringing images, and Amazon certainly does not profit from these views even if they do occur. Plaintiff fails the direct financial benefit prong of the vicarious liability standard for this reason alone.[6]

## VI.   CONCLUSION

Plaintiff in his opposition has ceded his direct infringement claim against Amazon. His theories of secondary infringement fails to state a claim on which relief may be granted. Thus, for each of the foregoing reasons, all claims should be dismissed.

Dated:  May 19, 2014                                    Respectfully submitted,

                                                       FARELLA BRAUN + MARTEL LLP


                                                       By:    */s/ Deepak Gupta*
                                                              Deepak Gupta

                                                       Attorneys for Defendant
                                                       AMAZON.COM, INC.

---

[6] To the extent Plaintiff is contending that his takedown notice provided Amazon with the "practical ability" to control the infringement, then (a) as explained in Section III(D), above, he fails to plead an actual direct infringement after that time, and (b) by deactivating the buy link, any direct financial benefit was severed (*see* Mot. at 15-16).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ON MOTION TO DISMISS
CASE NO. 14-CV-02115-ABC-E                            - 16 -                            30240\4377117.2
RELATED CASE: 14-CV-10413-ABC-E